UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BREWART,

       Plaintiff/
       Counter-Defendant,

                                  Case No. 2:13-cv-11657
v.                             District Judge Victoria A. Roberts
                                  Magistrate Judge Anthony P. Patti

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

       Defendant/
       Counter-Plaintiff.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT ITS MOTION TO AMEND COUNTER-COMPLAINT  (DE 37)

**I.     RECOMMENDATION**:  The Court should deny Defendant Travelers Casualty Insurance Company of America's ("Travelers") motion for summary judgment and permit Travelers to amend its counter complaint to add a claim for unjust enrichment.  (DE 37.)

**II.    REPORT**

    **A.    Background**

The Court set out the background in this case in its August 5, 2014 Order granting Traveler's motion to amend its affirmative defenses and to file a counter complaint. (DE 28.) The Undersigned incorporates the August 5, 2014 Order and will only set out the facts necessary to dispose of the instant motion.

This case arises out of an insurance coverage dispute between Plaintiff William Brewart and Travelers. Mr. Brewart alleges that, on April 4, 2011, unknown individuals broke into his property, stole assets, and destroyed the building. He made a claim through his insurance policy with Travelers. Travelers issued a benefit payment of $21,244.06 on April 19, 2011. (DE 1 at ¶ 8.) According to Plaintiff, this was insufficient to account for necessary heating and electrical repairs, plumbing work, stolen merchandise, and depreciation. In addition, Mr. Brewart alleges that he suffered business losses in the amount of $20,000, due to lost rents on his two rental properties. In the instant matter, he brought claims for breach of contract and negligent misrepresentation against Travelers as a result of the purported deficiencies.

Travelers conducted a deposition of Mr. Brewart on November 27, 2013, during which he testified that he owned two rental properties at 312 and 314 West Seven Mile Road in Highland Park, Michigan (the "312 unit" and the "314 unit"). (DE 17-6 at 21.) According to Mr. Brewart, the 314 unit was occupied during the time of the April 4, 2011 property damage and the 312 unit was leased but not

occupied. (Id. at 17-6 at 20.) He testified that the unoccupied rental unit was rented pursuant to a June 15, 2010 lease with Rayseanna Gantz ("the Gantz lease"). (DE 40-1.) As he explained at his deposition:

> **Q:** So she signs the lease in June 2010 with the understanding she was going to start in January 2011?
>
> **A:** That's what it says here. She gave me the money and, you know, I gave her all the-- I worked with her because I wanted to build that place for her and make it real nice and I'm ready to spend $10,000 there. She's going to make a Dollar Store in there. She wants to go to New York and Los Angeles and get stuff and get herself ready. Now, she waited all this time and when the time comes and she's not ready to open up then we're coming to before the incident happens. When the incident happen[s] she came in and looked at it. She's, she's almost going [to] back out. She gave me her rent, but she was not pleased to see that the building was broken.
>
> **Q:** Okay. How did she pay you?
>
> **A:** She paid me in cash.

(DE 17-6 at 19-20.)

Travelers then deposed Ms. Gantz on January 6, 2014. During the deposition, she indicated that she planned to use the rental unit as a hair weave shop, to go along with the hairdresser who was currently renting the 314 unit. (DE 17-7 at 11.) She noted that she first met with Mr. Brewart's son in 2010 and viewed the property, which she described as "demolished." (Id. at 12.) Mr. Brewart's son informed her that he would invest $10,000 into fixing up the property and she signed the lease. However, when Ms. Gantz returned, none of the

3

repairs had been made. She noted that she paid him a $600 down payment for the repairs, but did not pay him any rent. (Id. at 15.) She further revealed that Mr. Brewart attempted to sue her in the 36th District Court for unpaid rent in the amount of $10,000, but that his filing-fee check bounced and the suit was never initiated. (Id. at 19-20.) Finally, although she did not specifically answer a question about it, her testimony perhaps indicates that her reasons for not renting the property pre-dated the April 2011 incident. (Id. at 18.)

As a result of Ms. Gantz' deposition, Travelers moved to amend its affirmative defenses and file a counter complaint. (DE 17.) The motion was granted on August 5, 2014. (DE 28.) In its counter complaint, Travelers brings claims for breach of contract and common law fraud. (DE 31.) It also seeks a declaratory judgment that it has no obligation to indemnify Mr. Brewart, that it is entitled to a return of all monies previously paid to Mr. Brewart, may declare the insurance policy void, and is entitled to all money expended in the investigation of the claim, plus attorney fees.

### B. <u>The Instant Motion</u>

Travelers filed the instant motion on January 8, 2015. It asserts that it is entitled to summary judgment on the basis that Mr. Brewart fraudulently submitted Ms. Gantz's lease as a basis for part of his claim. Travelers argues that Plaintiff "lied about the facts and circumstances of the rental," the amount paid in rent, and

4

Ms. Gantz's reasons for not taking possession of the unit "all for the purpose of obtaining insurance proceeds under false pretenses." (DE 37 at 14.) It points to terms in Plaintiff's insurance policy that bar coverage when an insured has committed fraud or misrepresented material facts of a claim under the policy. In addition, Travlers seeks leave to amend its counter complaint to add a claim for unjust enrichment. It reasons that, if the Court declares the insurance contract to be void, it will have no other recourse to recover the money already paid to Mr. Brewart.

    Mr. Brewart opposes the motion. He asserts that Ms. Gantz's lease was valid and enforceable on April 4, 2011 (the date of the loss). He contends that his failure to disclose the existence of the lawsuit against Ms. Gantz for non-payment of rent was not a material misrepresentation because it had no bearing on the instant case. He indicates that it was not him, but his son who filed the lawsuit against Ms. Gantz, and that she was never served with the complaint anyway. In support of his argument, Mr. Brewart provides his own affidavit averring that he was unaware of the October 10, 2010 lawsuit against Ms. Gantz. (DE 40-3.) He also provides a copy of the lease signed by Ms. Gantz, which ran from June 15, 2010 through June 15, 2011 (DE 40-1), and an affidavit from Ms. Gantz indicating that she "did not return [to the 312 property] at any time after the deposit check was given to Mr. Brewart to take possession of the unit or to examine the unit or

5

any repairs." (DE 40-4). Further, Mr. Brewart argues that Travelers should not be granted leave to amend its counter claim to assert a claim of unjust enrichment because of undue delay and futility.

In its reply, Travelers maintains that, even if the lease with Ms. Gantz was valid and enforceable, Mr. Brewart fraudulently represented the "causal connection" between Ms. Gantz's "failure/refusal to take occupancy and/or pay rent and the alleged vandalism" incident. (DE 43 at 3.) Travelers contends that Plaintiff has failed to come forward with competent evidence to defeat its motion for summary judgment. In addition, Travelers notes that Plaintiff failed to refute its accusation that he knowingly and intentionally concealed or misrepresented his loss of rents from Ms. Gantz. Finally, Travelers asserts that it should be permitted to amend its counter complaint, arguing that Plaintiff was not prejudiced by any delay, because the new claim will neither introduce any new theories or facts nor require additional discovery.

### C. Standard

#### 1. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing

6

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations

7

omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### 2. Motion for Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court.  The Rule provides that the Court should freely give leave for a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'"  *Carson v. U.S. Office of Special Counsel*, 663 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).

### D. Discussion

Travelers asserts that it is entitled to summary judgment on the basis that Mr. Brewart materially: misrepresented the causal connection between Ms. Gantz's failure to rent the 312 property and the April 5, 2011 incident; misrepresented the amount of his loss, based upon the term of the lease; and, concealed Gantz's failure to pay rent and the fact that he'd had to sue her for lease payments.  As a result,

8

Travelers argues that the insurance contract should be considered void.  Travelers also seeks leave to amend its counter complaint to add a claim of unjust enrichment to ensure that it can recover any money incorrectly paid to Mr. Brewart.  Mr. Brewart opposes both of Travelers' contentions.  I will consider each argument in turn.

### 1. The Court Should Deny Travelers' Motion for Summary Judgment

The crux of Travelers' argument centers on the Ms. Gantz's lease, her reasons for refusing to rent the 312 unit, and the money she may have paid to Mr. Brewart, either for rent or as a down payment to ensure repairs.  It cites to the following provisions of Mr. Brewart's insurance contract with Travelers to support its contention that Mr. Brewart's actions related to the Gantz lease void his insurance contract:

> **E.  Property Loss Conditions**
>
> > The following conditions apply in addition to the Common Policy Conditions:
> >
> > \*          \*          \*
> >
> > 3.   Duties in the Event of Loss Or Damage
> >
> > > a.   You must see that the following are done in the event of loss or damage to Covered Property:
> > >
> > > \*          \*          \*

9

>    (9)    Cooperate with us in the investigation and settlement of the claim.
>
> F.   **COMMERCIAL PROPERTY CONDITIONS**
>
>   1.   **Concealment, Misrepresentation or Fraud**
>
>   This Coverage Form is void in any case of fraud by you. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a *material* fact concerning:
>
>   a.   This Coverage Form;
>   b.   The Covered Property;
>   c.   Your interest in the Covered Property; or
>   d.   A claim under this Coverage Form.

(DE 17-4, emphasis added.) Travelers also correctly asserts that Michigan courts have determined misrepresentation of a material fact can serve to void an entire insurance policy. Specifically, "[a]n insurance policy may be voided by the insurance company on the grounds of fraud or false swearing if it is shown that the insured willfully misrepresented a *material fact*." *O-So Detroit, Inc.v. Home Ins. Co.*, 973 F.2d 498, 504 (6th Cir. 1992) (emphasis in original) (citing *West v. Farm Bureau Mut. Ins. Co. of Mich.*, 63 Mich. App. 279 (1975) *rev'd on other grounds*). Applying the foregoing authority, in order to prevail on its motion, Travelers must come forward with competent evidence to definitively demonstrate that Mr. Brewart misrepresented a material fact.

Travelers has failed to make such a showing, because many facts remain in dispute. As Mr. Brewart contends (and Travelers does not seem to dispute), the

Gantz lease was a valid and enforceable document, which distinguishes it from the cases on which Travelers relies to support its showing of fraud. *See, e.g., 7 Mile & Keystone, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 11-12930, 2013 WL 1629209, at *1 (E.D. Mich. Apr. 16, 2013) (granting the defendant's motion to dismiss where the insured sought to recover loss of business income based on a falsified lease that was *created one month after* the property damage in its claim). The Court is therefore left with two moderately conflicting depositions and affidavits, which could reveal fraud on the part of Mr. Brewart, or a simple misunderstanding between landlord and tenant.

    In fact, there are conflicting accounts as to what Ms. Gantz was told and her reasons for not following through on her commitment to occupy and pay rent for the property. Ms. Gantz testified that Mr. Brewart's son told her in 2010 that he was going to make repairs to the property, and that the next day, she returned "to do the lease" and the repairs were not made. (DE 17-7 at 13.) She testified that she paid $600 down to ensure the repairs would be made. (Id. at 15.) Travelers asserts that this, along with the lawsuit against Ms. Gantz for non-payment of rent, is sufficient to show that Plaintiff lied about the reasons for Ms. Gantz failing to fulfill the lease and the amount of money he lost, further noting that the lease with Ms. Gantz was only good for another two months following the April 2011 incident. While this point is arguable, the evidence does not directly indicate the

11

reasons Ms. Gantz failed to follow through with performance of her lease. The following exchange occurred during Ms. Gantz's deposition:

> Q. If [Mr. Brewart] said that the only reason why you didn't rent the space was because of the loss that occurred in April of 2011, that's not true?
>
> A. 2011?

(DE 17-7 at 18.) Ms. Gantz never specifically answered the question asked; however, Mr. Brewart's testimony regarding Ms. Gantz's extensive preparations to open the Dollar Store and their mutual understanding that she would not begin operations until January 2011 (DE 17-6 at 19-20), indicates a delay in the lease which would extend its term well beyond June 2011.

In addition, Mr. Brewart provided an affidavit from Ms. Gantz, in which she avers that she did not return to the unit at any time after she gave a deposit check to Mr. Brewart. Such a statement could actually cut both ways, because neither party provides the date on which Ms. Gantz paid Mr. Brewart $600. In her deposition, Ms. Gantz (somewhat confusingly) testifies that she signed the lease in 2010 and then, "after [Mr. Brewart's son] told [her] the place was ready," she paid him $600. (DE 17-7 at 13-15.) If she last visited the property in 2010, before the damage, and never returned to the property thereafter, then the April 2011 property damage may have had nothing to do with her non-performance. However, if she returned at some later point to pay the deposit, and then or later backed out as a result of the

12

April 2011 property damage, this would tend to favor Mr. Brewart's position with respect to causation and damages. As Mr. Brewart testified: "When the incident happen[s] she came in and looked at it. She's, she's almost going [to] back out. She gave me her rent, but she was not pleased to see that the building was broken." (DE 17-6 at 19-20.) This suggests that his tenant was aware of the damage, getting cold feet about going forward as a result of it, and only tentatively moving forward once she became aware of it. The Court cannot guess at these issues when deciding a motion for summary judgment and must draw inferences in the light most favorable to Mr. Brewart, the non-moving party.

Additionally, Mr. Brewart admits that he did not inform Travelers of the lawsuit against Ms. Gantz, but provides a sworn affidavit in which he avers that he was initially unaware that his son filed the lawsuit, and that, after settlement discussions with Ms. Gantz and her request for more time, "I obliged and directed my son not to pursue the lawsuit." (DE 40-3 at ¶¶5-6.) Travelers asserts that the affidavit is a sham, proffered to fabricate an issue of fact, and requests that it be stricken. A district court may strike all or portions of a post-deposition affidavit at the summary judgment stage where the affidavit "directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 908-909 (6th Cir. 2006). However, Mr. Brewart did not testify about the lawsuit, so there is no deposition testimony in conflict with the affidavit.

13

(*See* DE 37 at 12 ("Plaintiff never, during the claim investigation or at any time during the discovery process in this action, voluntarily disclosed he filed suit against Ms. Gantz for unpaid rents."), DE 37-5 at ¶ 11 and DE 17-6.)  Where there is no direct contradiction, the court may still strike the affidavit if it "constitutes an attempt to create a sham fact issue" considering the following factors:

> [W]hether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion that the affidavit attempts to explain.

*Id.* at 908.  Here, Mr. Brewart's affidavit is in response to Travelers' motion for summary judgment, in which it relies heavily on Mr. Brewart's failure to disclose the existence of the lawsuit.  His affidavit is therefore not clearly submitted for the purposes of a sham, but may well represent an attempt to explain his actions in relation to the lawsuit.  I do not believe that there is a solid basis on which to strike the affidavit as a sham, and it should not be ignored in determining whether there are disputed issues of material fact.

Furthermore, Mr. Brewart's argument that suing his tenant for unpaid rent (a common occurrence between landlords and tenants) does not contradict or preclude his claim for damages here is a point well-taken.  It is undisputed that the lawsuit occurred six months prior to the April 2011 incident and may only reveal that "at some point during the tenancy, Mr. Brewart and Ms. Gantz had a dispute

14

over unpaid rent," but does not bear directly on Mr. Brewart's potential losses as a result of the April 2011 property damage.  (DE 40 at 10.)  As Mr. Brewart points out, the existence of the lawsuit does not prove, at least for the purposes of summary judgment, that the Gantz lease was invalid "*much less that Mr. Brewer knew that his contract with Ms. Gantz was not valid and that he intended to defraud Defendant in his insurance claim.*" (DE 40 at 10) (emphasis in original.) To the contrary, the fact that court proceedings were brought seeking damages under the lease leads to the opposite conclusion, i.e., that either Mr. Brewer or his son believed that it was a *valid and enforceable* contract. .  He had every right to enforce it and to seek damages from Ms. Gantz for what was owed, without somehow waiving his right to obtain relief from his insurance company for breaching its own contractual obligation to pay for losses flowing from the property damage, including lost rent related to the April 2011 incident.

     While Defendant is free to exploit whatever factual inconsistencies may exist in its cross-examination of Plaintiff's witnesses at trial in order to attack the weight of the evidence or argue for inferences in its favor, such inconsistencies do not warrant dispositive relief.  Since key issues of material fact remain in dispute and are subject to divergent, yet alternatively plausible inferences and conclusions, I recommend that the Court deny Travelers' motion for summary judgment.

## 2. The Court Should Grant Travelers' Motion to Amend Counter Complaint

Travelers seeks the Court's leave to amend its counter complaint to assert a claim for unjust enrichment. Travelers argues that it is entitled to a "return of all the monies paid to Plaintiff arising from Plaintiff's fraudulent conduct." (DE 37 at 17.) Mr. Brewart counters that Travelers failed to show a reason for its delay in so moving. He points out that Travelers learned of the facts on which it bases its claim for unjust enrichment over a year before and already filed a motion to amend its pleadings under the same set of facts. While this may be true, his argument fails under the liberal amendment standard provided by Rule 15.

First, Mr. Brewart has not demonstrated that the amendment was brought in bad faith, for dilatory purpose, would prejudice him, or would be futile. Instead, he only argues that the amendment was unjustly delayed, relying upon the First Circuit's opinion in *Hays v. New England Milwork Distributors*, 602 F.2d 15 (1st Cir. 1979) to support his position that Travelers bears the burden to demonstrate a valid reason for such a delay. However, in *Moore v. City of Paducah*, 790 F.2d 557, 560 (6th Cir. 1986), the Sixth Circuit analyzed the *Hays* holding, and noted that its sister circuit had actually considered *several other factors in addition to* delay, including prejudice to the opposing party, the fact that discovery had been completed, and the fact that the amended claim was not contemplated in the original complaint, when assessing whether or not to allow amendment. The Sixth

16

Circuit therefore held that "'delay alone, regardless of its length, is not enough to bar [amendment] if the other party is not prejudiced.'" *Id.* (quoting 3 Moore's Federal Practice, ¶ 15.08 at 15.76.); *see also Security Ins. Co. of Hartford v. Kevin Tucker & Assoc., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995) (holding that delay alone did not justify denial of leave to amend and instead "the party opposing a motion to amend must make some significant showing of prejudice to prevail.")  An example of undue prejudice exists where an amendment would add an unrelated charge, forcing the party opposing the motion to formulate an entirely new defense. *See Prather v. Dayton Power & Light Co.*, 918 F2d 1255, 1259 (6th Cir. 1990).

Mr. Brewart also fails to demonstrate, or even argue, that he will suffer prejudice from Travelers' delay in bringing the amendment.  Travelers addresses any potential prejudice argument by asserting that it "merely seeks to add an alternative theory by which to recover" the monies already paid to Plaintiff.  (DE 43 at 7.)  This is entirely permissible.[1]  Travelers further maintains that the addition

---

[1] Under Rule 8, "a pleading does not become insufficient by reason of a party having made alternative, or even contradictory, claims." *Detroit Tigers, Inc. v. Ignite Sports Media,L.L.C.,* 203 F.Supp.2d 789, 793 (E.D.Mich.2002) (citing *Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 92 (6th Cir. 1982)). In *Ajuba v. Saharia,* 871 F. Supp.2d 671, 692 (E.D. Mich. 2012), this Court acknowledged that "under FRCP 8(e)(2), a party may plead a contract claim and an alternative claim for unjust enrichment." (internal citation omitted). "Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative." *Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006). Moreover, even though a plaintiff may not ultimately be able to recover under both theories, it is

17

will not introduce any new theories or facts that would require additional discovery or cause delay. I agree, and further observe that if the trier of fact were to find that Mr. Brewart received insurance proceeds under false pretenses, it would logically follow that he has been unjustly enriched at Travelers' expense. Accordingly, under the liberal amendment standard of Rule 15, Travelers is entitled to amend its counter complaint to add a claim for unjust enrichment.

### D. Conclusion

In sum, I recommend that the Court grant in part and deny in part Traveler's motion for summary judgment and to amend its counter complaint. On its motion for summary judgment, I recommend that the motion be **DENIED** because there remains a genuine dispute of material fact. Travelers' motion to amend its counter complaint, however, should be **GRANTED**.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

---

not appropriate to dismiss an equitable count on that basis alone, even at the summary judgment stage. *West v. Compass Environmental*, 509 F. Supp.2d 1353, 1363 (N.D. Ga. 2007).

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 10, 2015                s/Anthony P. Patti
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 10, 2015, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
